GEORGIA PUBLIC SERVICE COMMISSION et al. v. UNITED STATES et al.

No. 563.

District Court, N. D. Georgia.
March 3, 1930.

168

S. J. Smith, Jr., of Atlanta, Ga., for Georgia Public Service Commission.

Luther M. Walter, Nuel D. Belnap, and John S. Burchmore, of Walter, Burchmore & Belnap, all of Chicago, Ill., for Georgia Public Service Commission.

Watkins, Asbill & Watkins, of Atlanta, Ga., for intervener.

Elmer B. Collins, Sp. Asst. Atty. Gen., and E. M. Reidy and Daniel W. Knowlton, both of Washington, D. C., and McDaniel, Neely & Marshall and Alston, Alston, Foster & Moise, all of Atlanta, Ga., for Interstate Commerce Commission.

Before BRYAN, Circuit Judge, and BORAH and SIBLEY, District Judges.

SIBLEY, District Judge.

Bill No. 563 was brought by the Public Service Commission of Georgia under 28 U. S. Code, §§ 41 (28), and 46 and 47 (28 USCA §§ 41(28), 46, 47), to enjoin and set aside the order of the Interstate Commerce Commission, dated December 9, 1929, on its docket No. 17517, whereby the rates in Georgia on stone, slag, sand, gravel, etc., were prescribed to conform to the interstate rates thereon. Bill No. 565, brought by other interested parties for the same purpose, has been consolidated into No. 563. On the hearing for an interlocutory injunction, the evidence before the Interstate Commerce Commission in making the order was not introduced here, so that no question depending on that evidence can be considered, but only such questions as arise upon the face of the order and of the findings of fact preliminary to it. The proceedings of the Interstate Commerce Commission which began in 1925 are reported in 122 I. C. C. 133, and 160 I. C. C. 309, and will be barely summarized here. Reasonable interstate rates on stone, slag, sand, gravel, etc., for what may be referred to as the Georgia territory were investigated, and also the question of discrimination by the then interstate rates under the procedure authorized by 13 (4) of the Interstate Commerce Act as amended (49 USCA § 13(4). After a hearing which was indubitably full, on January 21, 1927, a scale of maximum rates based on distance was established as reasonable in interstate commerce. The finding as to discrimination by the Georgia intrastate rates was thus stated (122 I. C. C. 169):

"Considering the results brought about by this order [that establishing the then Georgia rates] it could not be found from this record to have brought about a rate situation which has in the past been unjustly discriminatory against interstate commerce. We are, however, in these proceedings approving a distance scale of rates for application alike to the interstate transportation of all of the commodities here considered. There is of course no transportation reason for the maintenance of a different basis of intrastate rates on these commodities * * * than that herein found reasonable for interstate transportation. However, in view of the attitude taken by the Georgia commission in

the past which we have above adverted to we do not now deem it necessary to make any finding or enter any order in No. 17517 for the future in so far as unjust discrimination against interstate commerce is there involved, because it is felt that the Georgia commission will co-operate in authorizing such revisions as may be necessary to bring their rates into harmony with the interstate adjustment herein approved."

The Georgia Commission did revise its rates March 13, 1928, adopting a maximum scale based on distance in the main upon the plan of the interstate scale. Its authorized charges on single line hauls for distances under 200 miles agree with the interstate scale in ten items, but are lower in seven, and for distances over 200 miles agree in three items, but are higher in nine. On joint line hauls the differences are greater, and in all cases the Georgia scale is lower. A difference of view as to weak lines of railroad, and some other matters, also appears. Thereupon, on complaint, the Interstate Commerce Commission reopened its docket No. 17517 for the purpose of reconsidering the question of discrimination by the altered state rates against interstate commerce, but refused to go again into the question of the reasonableness of the two opposing scales. On December 9, 1929, on full findings of the existence of discrimination against interstate commerce, the order here complained of was entered, the general effect of which is to prescribe the interstate scale for use in intrastate transportation.

The only contentions of complaint arising upon the face of this record which seem to us to be debatable are: (1) That a full hearing was denied in that, since the new Georgia rates were prescribed, the matter was reopened only as to discriminations by them against interstate commerce, excluding the question of their intrinsic reasonableness; (2) that the order did not stop with prescribing a maximum and minimum for interstate rates, but took over from the state authority the general function of intrastate rate making on these commodities for the future; (3) that the minimum sought to be prescribed is indefinite and uncertain; (4) that as to rates above 200 miles the interstate rates are arbitrary and unreasonable, and themselves discriminate against the shorter hauls and other commerce.

1. The delegation to the Interstate Commerce Commission of power to prescribe an intrastate rate is found in § 13, subsection 4, of the amended Commerce Act (49 USCA § 13(4). The power reaches to the general revision of generally discriminatory state scales, Wisconsin R. R. Commission v. C. B. & Q. R. R., 257 U. S. 563, 42 S. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086, and to dealing with particular rates, commodities and practices, Florida v. United States (D. C.) 30 F.(2d) 116. But in every exercise of this interference with state functions the procedure required by subsection 4 must be followed. The first named requisite of the hearing required is that there be a "full hearing." If discrimination in state rates be found substantial enough to require removal, the question must then always arise whether the state rate or the interstate rate is unreasonable and should be altered. A previous establishment of the interstate rate as reasonable will not settle the question, because the representatives of the state are entitled to a full hearing on this question of relative reasonableness. We think, however, that such a hearing was here afforded. A full hearing was undoubtedly given prior to the order of January 21, 1927. The identical state rates were not then in existence, but all the questions they raise were in existence and were investigated. New interstate rates were in that very proceeding established as reasonable, and the opinion expressed that, as no transportation differences existed, the state rates ought to conform in order to escape future discrimination, but no positive order of conformity was then issued, in order that the state commission might work the state rates out for itself. This left the proceeding in a manner uncompleted, and certainly proper to be reopened after the state rates were made. Ordinarily, nothing would be then left for examination except whether the new state rates did so conform to the new interstate rates as to escape discrimination. It was found that they did not, and conformity was ordered on a review of the whole record. While the hearing, which is to be considered a single one, lasted for years, we cannot say the evidence taken in any part of it had become stale. If the Georgia Commission had any definite proof of altered conditions, it should have been concretely offered. We discover no abuse of procedure in reaching the order of December 1, 1929, in the evidence now before us.

2. The second question depends upon the language of the order. Section 13(4) provides that the Interstate Commerce Commission, on finding discrimination by state rates, "shall prescribe the rate, fare, or charge, or the maximum or minimum, or maximum and minimum, thereafter to be

charged." The language is mandatory. One of four things must be done: First, make a fixed rate; second, make a maximum; third, make a minimum; fourth, fix both a maximum and a minimum. The order of Dec. 9, 1929, undertakes the last. It required the establishment of intrastate rates "which shall not be lower, distance considered, than those contemporaneously applicable in the interstate transportation of the same commodities * * * not exceeding the rates set forth in the appendix to this report, and heretofore found and prescribed as reasonable in No. 17517 for the interstate transportation of said commodities." Elsewhere the order used the expression "contemporaneously maintained by" the railroads. The maximum thus prescribed is the maximum scale definitely set forth in the appendix, and the same as the maximum in interstate commerce. No question is raised as to its validity. The minimum is the rate "contemporaneously applicable," or "contemporaneously maintained" by a particular carrier in interstate commerce for the same distances. Whether the minimum is lawfully prescribed we all think depends on whether the order means by "contemporaneously" the rates *now* applicable and *now* maintained by the railroads, which we think would be a certain and lawfully fixed minimum, or whether it means the rates that may *at any time in the future* be applicable or maintained by the railroads in interstate commerce. In the latter meaning we think the order would be unlawful, because, should in the future any of the interstate rates be altered, either by the railroads or by the Commission itself on the usual proceedings only, a change in the existing state rates would ipso facto result. Thus for all time in the future, until this order should be revoked, the Interstate Commerce Commission would have absorbed to itself the complete control of intrastate rates on these commodities, altering them by altering the interstate rates without the hearing as to then conditions which is required by § 13 (4).

If this could be done as to these rates, it could be done for all rates in all the states. The complete control of intrastate rates could be reached by one general hearing in which it was determined that all State rates which differed from interstate rates were discriminatory and to be conformed to contemporaneous interstate rates, with future changes only such as the carriers or the Interstate Commerce Commission might make. This would have much in the way of simplicity

and uniformity to commend it, but as the Constitution, which gives the federal government the right to regulate interstate commerce, has reserved the general control of intrastate commerce to the states, we think this result could be achieved only by altering the Constitution. Certainly the powers of the Commission under § 13 (4) were not intended to be so stretched. The section contemplates investigation of particular situations under conditions then existing, with a full, formal hearing, and authorizes interference with state rates only when, there is disclosed a present, real, and substantial discrimination against, or other specific detriment to, interstate commerce. Florida v. United States (D. C.) 30 F.(2d) 116, 117. An order like the present one, applying to but one rate, would be as vicious in principle, and unlawful for the same reasons, as the most extreme one that has been supposed would be. A majority of this court are of opinion that the present order means only to establish as the minimum the interstate rates actually in force at its date. The writer thinks it means to operate automatically in the future whenever interstate rates may be altered, and that thus intended it is unlawful. On the ground, however, that it might mean either thing, and should, if possible, be so construed as to be lawful, I acquiesce in sustaining it. State of Florida v. United States (D. C.) 30 F.(2d) 116, 117.

3. Even so, it appears that some of the railroads, at the date of the order, had special rates allowed for reasons of competition on some of their hauls which are out of line with their general mileage scale. The question is raised as to which rate shall be the minimum for the particular distance, seeing that the railroad has two established rates for it. Probably, as minimums are involved, the lowest established rate should be followed, but the record does not show what the exact situation is, so that it could really be adjudicated. Nor do we think an exceptional situation such as is suggested would render uncertain and invalid the entire order. It should rather be amended by a supplemental order covering the particular overlooked instance. See Wisconsin R. R. Commission v. C. B. & Q. R. R., 257 U. S. 579, 42 S. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086.

4. The last question is whether the interstate scale of maximums is not arbitrary and unreasonable and discriminatory against intrastate commerce in that the hauls above 200 miles are too low to be compensatory, and thus throw an undue burden on other com-

merce, so that the higher state rates on such hauls should not have been displaced. It is found that the intrastate commerce is mostly on the hauls under 200 miles. If the longer hauls are noncompensatory, they tend to favor interstate commerce at the expense especially of intrastate commerce. Dealers outside of Georgia would not be entitled to an unfairly low rate because they could not otherwise compete in Georgia markets. Geographical position must limit the range of business in such articles as stone, sand, gravel and the like. The Georgia Commission thinks the interstate rates for hauls above 200 miles are thus improper. Interstate Commerce Commissioners Aitchison and Woodlock think the same. 122 I. C. C. 173. But the majority of the Interstate Commerce Commissioners have determined otherwise, and, since the evidence is not before us, we are bound to regard the conclusion of the majority as correct.

On the whole case, we find no sufficient cause to hold the attacked order to be unlawful, and refuse an interlocutory injunction.