153 So. 622

## WESTERN RY. OF ALABAMA et al. v. MONTGOMERY COUNTY.

### 3 Div. 91.

Supreme Court of Alabama.
March 8, 1934.

Rehearing Denied April 5, 1934.

W. A. Townes, of Wilmington, N. C., W. L. Lee, of Dothan, and Steiner, Crum & Weil, of Montgomery, for appellants.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

**GARDNER, Justice.**

In December, 1931, the county of Montgomery filed its complaint with the Alabama Public Service Commission protesting an unjust and unreasonable rate on clay, gravel in carloads, from Cantelou's Spur, Ala., at which point it owns and operates a gravel pit, to points on defendants' lines in Montgomery county, seeking reasonable rates for the future, as well as reparations for past shipments.

It was insisted in that complaint that the Western Railway of Alabama and the Atlantic Coast Line Railroad Company were under common management or control, and that these roads should have applied to the above-noted shipments the single-line scale of rates.

The commission in July, 1932, entered an order in accordance with said complaint, and fixed the scale of rates on items sought, holding over the matter of reparations for further proof and consideration.

Amended petition was duly filed in August, 1932, and a further hearing had on the matter of reparations in September, 1932. Evidence was offered by the petitioner, but none on behalf of the defendants. The commission was of the opinion that defendants should have based their charges on the scale of single-line rates, and that petitioner was entitled to reparations for the excess paid within the statutory limitation. The order for reparations was entered in October, 1932. Defendants acquiesced in the order prescribing the rates for the future, but declined to pay the reparations, and this suit followed, in accord with the provisions of section 9722, Code 1923.

Upon the trial in the circuit court, plaintiff offered certified copies of the above-noted orders of the commission with the findings of fact accompanying the same, together with other orders and proceedings of the commission bearing upon the matter, to which the commission makes reference. Defendants offered no proof.

The orders of the commission constitute prima facie evidence of the facts therein stated (sections 9703, 9723, Code 1923), are presumably reasonable and valid, and based upon proper evidence. Railroad Commission v. A. G. S. R. Co., 185 Ala. 354, 64 So. 13, L. R. A. 1915D, 98; Alabama G. S. R. Co. v. Alabama Public Service Commission, 210 Ala. 151, 97 So. 226. Defendants must therefore rest their case upon the inherent fatal weakness of the commission's order, the basis of the present suit, as appearing upon the face of the proceedings offered in proof.

Defendants, in the first place, insist that reparations were awarded for rate charges which had been previously fixed and approved by the commission, and were therefore entirely lawful when collected, and that the statute should not be so construed as to give retroactive effect to the matter of reparations under such circumstances. We are cited to Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U. S. 370, 52 S. Ct. 183, 186, 76 L. Ed. 348, where the holding was in effect that the Interstate Commerce Commission, in declaring a specific rate as reasonable and lawful, is in the exercise of a legislative func-

tion, and may not at a later time, upon the same or additional evidence, declare its own previous finding erroneous, and subject the carrier which conformed thereto to the payment of reparation measured by what the commission now holds it should have decided in the earlier proceedings, the court saying: "Where, as in this case, the Commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi judicial capacity, ignore its own pronouncement promulgated in its quasi legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed."

And from our own court, attention is directed to the case of T. R. Miller Mill Co. v. L. & N. R. Co., 207 Ala. 253, 92 So. 797, 800, where it is said: "Manifestly there can be but one lawful rate in force at any given time, and that rate by the very terms of the statutes quoted, is the rate which has been filed with and approved by the Commission, and published by the carrier. Behind that rate, so long as it remains unchanged, and so far as its application to specific shipments is concerned, neither shipper nor carrier can go, and courts cannot inquire."

Plaintiff's contention, as to this argument, is that the Miller Case, supra, was prior to the present statute, and reliance is also had upon Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 53 S. Ct. 145, 147, 77 L. Ed. 360, 85 A. L. R. 254, reviewing the decision of the Supreme Court of Montana in Sunburst Oil & Refining Co. v. Great Northern R. Co., 91 Mont. 216, 7 P.(2d) 927.

This latter case, however, merely recognized the general rule that the Supreme Court of the United States must accept the construction given to the state statute by the highest court of the state, and so long as the statute, as thus construed, offers no offense to the Federal Constitution, that court is without authority to interfere. The opinion deals with the Arizona Grocery Co. Case, supra, pointing out the matter of differentiation, and, in effect, reapproves the same. The court was careful to withhold approval of the construction given the statute by the Montana court, saying: "The inquiry is irrelevant whether we would construe the statute in the same way if the duty of construction were ours and not another's."

It is apparent therefore that the argument for such a construction of the statute presents a question of serious import, and should be left for determination only when necessarily presented for a decision. But, as we interpret the record, such statutory construction is not here presented, and the question is therefore left to one side and undetermined.

■ We say the question is not presented for the reason we do not construe the record as disclosing that the rate charged plaintiff was one fixed and approved by the commission, but one selected by the carriers in the exercise of their own judgment and discretion, and the case more nearly falls within the class considered in Eagle Cotton Oil Co. v. Southern R. Co. (C. C. A.) 51 F.(2d) 443, where reparation was awarded upon the theory the rate enforced was a carrier-made rate as distinguished from one fixed by law.

■ The record discloses that in August, 1923, the commission, on the complaint of the board of revenue of Montgomery county against these two defendant railroads, found the existing rate on gravel for Cantelou's Spur to local stations on the Atlantic Coast Line in Montgomery county to be unreasonable, fixed a reasonable rate, and awarded reparation, Board of Revenue of Montgomery County v. Western Ry. of Alabama, 34 A. P. S. C. 77; and in 1925, a petition for modification of this order was denied, 36 A. P. S. C. 102. Subsequently, and in August, 1927, the commission had before it the entire Alabama rate structure on gravel and related commodities, and prescribed a certain scale of rates applicable throughout the state, but expressly excluded therefrom the rate involved in shipments of gravel from Cantelou's Spur to local stations on the Atlantic Coast Line in Montgomery county, and as fixed by the order found in 34 A. P. S. C. 77, supra. It was held, however, that such rates may be restricted if the carrier so desired to apply only on clay gravel in carload lots consigned by and to Montgomery county. The carrier did accordingly so restrict these rates as thus authorized, but they were made to expire by limitation on and after December 31, 1930. The order here referred to is found in Alabama Public Service Commission v. Louisville & Nashville R. Co., 38 A. P. S. C. 223. Therefore, it appears that on and after January 1, 1931, the rates applicable to these particular shipments fell under the general order of August, 1927, as reported in 38 A. P. S. C. 223. In that order what is known as the single-line scale of rates was considerably lower than the joint-line rates, and reference is made to the case before the Interstate Commerce Commission of January 21, 1927, known as Rates on Chert, Clay, Sand, and Gravel within State of Georgia, and Related cases, 122 I. C. C. 133, 176 (in which defendant Atlantic Coast Line actively par-

ticipated), and wherein it was stated that: "In determining whether hauls are single-line or joint-line, carriers under common control or management shall be regarded as one line."

The commission in the general order of August, 1927 (38 A. P. S. C. p. 230), expressly recognized and applied the same principle and prescribed an entirely separate and lower rate for single-line shipments, and this present order discloses clearly the difference in the single-line and joint-line scale of rates.

■ The question recurs, therefore, as to the duty resting upon these defendants in the application of just and reasonable rates for this particular character of shipments after the limitation of the special rate of 1923, which expired, as previously stated, in December, 1930. Defendants charged and collected on the joint-line rate, and the commission determined they should have given application to the single-line scale, and accordingly awarded reparation for the difference. The order of 1927 gave full notice that the commission had adopted the principle of the Interstate Commerce Commission to the effect that carriers under common control or management shall be recognized as one line, and that such carriers so controlled should apply the single-line scale of rates.

True these two defendants were not so designated in the order, though reference was made to the components of the Southern Railway system, as that question seems to have been previously determined as to that particular road. Nevertheless, these defendants, who were parties to that proceeding, were well informed that the single-line scale was applicable where carriers were under a common management or control. It may be well surmised that a very good reason for a failure of the commission at that time to point out these defendants in particular was that the information was not then available. It was a matter better known to the roads involved. The commission was engaged in that order in prescribing just and reasonable rates, and if these defendants, parties to the cause, were in fact under a common management or control, they then knew as well as if they had been particularly designated, that at the expiration of the special rate in December, 1930, the single-line scale of rates would apply to them under the general order of 1927.

■ But defendants insist the commission acted without proof of this essential fact, and cite Railroad Commission v. L. & N. R. Co., 197 Ala. 161, 72 So. 397, 398. There the order was for a physical connection for the interchange of freight and traffic between railroads in the same city or town. The holding was that testimony was essential if the statute then considered was to be observed, and that the order, disclosing upon its face that no testimony was taken, was invalid and unenforceable.

This ruling is in accord with the authorities generally, that there must be preserved the right to a hearing and procedure upon due proof. Southern R. Co. v. Commonwealth of Virginia, 290 U. S. 190, 54 S. Ct. 148, 78 L. Ed. 260; Interstate Commerce Commission v. L. & N. R. Co., 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431.

■ The commission, in its determination, however, is not to be hampered by mechanical rules governing the weight or effect of evidence, and the mere admission of matter which, under the rules of evidence applicable to judicial proceedings, would be deemed incompetent, does not invalidate its orders. Western Paper Makers' Chemical Co. v. United States, 271 U. S. 268, 46 S. Ct. 500, 70 L. Ed. 941.

■ The following observation in Spiller v. Atchison, T. & S. F. R. Co., 253 U. S. 117, 40 S. Ct. 466, 470, 64 L. Ed. 810, as to the Interstate Commerce Commission, is applicable here: "These provisions allow a large degree of latitude in the investigation of claims for reparation, and the resulting findings and order of the commission may not be rejected as evidence because of any errors in its procedure not amounting to a denial of the right to a fair hearing, so long as the essential facts found are based upon substantial evidence." See, also, Georgia Public Service Commission v. United States, 283 U. S. 765, 51 S. Ct. 619, 75 L. Ed. 1397. And in Railroad Commission v. L. & N. R. Co., supra, it was observed that the commission was not "bound by the strict rules of evidence which obtain in suits between private parties."

There were two orders entered by the commission on plaintiff's petition, the first establishing the single-line scale of rates for the future, and the second that for reparation. And there were two hearings, but it is all so interrelated and connected as to constitute one continuous proceeding, and should be so viewed. Georgia Public Service Commission v. United States (D. C.) 39 F.(2d) 167.

■ The complaint presented to the commission at the very outset contended for the single-line scale of rates based upon the specific and definitely expressed reason that

these two roads were under a common management or control. Defendants appear to have offered no proof to the contrary. But, on the contrary, the commission in its first order made reference to the petition filed in 1931 by these defendants (that is, presented by the Western Railway Company on behalf of itself and the Atlantic Coast Line), seeking the establishment of rates on gravel and related commodities in carloads between points on the Western in Alabama on the one hand, and points on the Coast Line in Alabama on the other, on the basis of the single-line scale prescribed by the commission in the order of 1927. Alabama Public Service Commission v. Louisiville & Nashville R. Co., 38 A. P. S. C. 223. The stated explanation was that these two carriers had concluded to establish the single-line rate on interstate shipments on these commodities, and they desired to apply the same basis for Alabama.

The commission issued an order granting the petition, but these defendants never effectuated the same in Alabama, because of a suspension of the matter as to interstate traffic by the Interstate Commerce Commission, though this basis of rates was applied by these defendants on intrastate shipments in the state of Georgia. The commission construed these proposals in the petition of 1931 as an admission on the part of these defendants of such an intercorporate relationship as to warrant such single-line basis of rates, and plainly so stated in its findings. The order was entered fixing future rates on this basis. This was on July 29, 1932. The foregoing matters were recited by the commission in its findings of fact accompanying the order.

Clearly the commission was authorized to take cognizance of its own orders and proceedings concerning this matter of rates and these two roads, and these defendants were of course well aware that just the year previous, and in June, 1931, they had presented the petition for an order approving the single-line scale. The commission, in the instant case, was of the opinion that further hearing should be had on the matter of reparation, and in the order of July 29, 1932, it was provided that the proceedings be kept open for that purpose, and in accordance therewith a further hearing was had as to the matter of reparation on September 13, 1932.

Notwithstanding the previous finding of the commission that defendants had by their previous conduct admitted common management or control, the defendants on the reparation hearing offered no denial and submitted no proof. Their defense was confined to the single question of the commission's jurisdiction. As to the matter of management or control, they stood silent, notwithstanding the original complaint had charged specifically they were under one management or control, and the commission had after a hearing on the matter of rates expressly concluded that by their previous conduct they had admitted the charge. Every opportunity was offered for a denial, and we are of the opinion the commission was justified in its conclusion that such management was an admitted fact. Subsequent events are of course ineffectual here, but it is not improper to direct attention to the fact that the copy of the opinion and findings of the Interstate Commerce Commission of November 7, 1933, Docket No. 17517, attached as a part of appellants' supplemental brief, discloses that the commission was fully justified in so assuming.

The matter of a voluntary establishment by these two roads of a single-line scale of rates, in view of the rulings in that regard, is certainly to be considered as at least some proof that a common management was the basis therefor. As said by the commission in its findings of July 29, 1932: "There were no other grounds on which to justify the carriers' application in respect to which that approval was issued." And this solemn pronouncement was not challenged on the subsequent reparation hearing. There was therefore proof by way of admission, both by the records of the commission of which these defendants were fully aware, and by their silent conduct on the hearing. L. & N. R. Co. v. Kentucky Railroad Commission (D. C.) 214 F. 465. To have required more would be to demand a formality of procedure which all the authorities hold unnecessary, so long as there is no denial of a right to a fair hearing and essential facts as based upon substantial evidence. Spiller v. Atchison, T. & S. F. R. Co., supra.

As to the findings and orders of the commission, they meet every requirement prescribed for the Interstate Commerce Commission by the United States Supreme Court in Mills v. Lehigh Valley R. Co., 238 U. S. 473, 35 S. Ct. 888, 59 L. Ed. 1414. The record discloses all the proceedings to have been conducted with care to a fair hearing and a judicious determination of the question presented. The findings of fact and opinion of the commission accompanying the orders are clear and to the point, and fully present all matters essential to the validity of the orders which follow. The criticism that the commission has not found any charge of excessive or unlaw-

ful rate, or that its findings are in any respect insufficient, is untenable.

The holding of the commission is in effect that these defendants, being under a common management or control, should have applied, upon the expiration of the special rate, the single-line scale of rates embraced in the order of 1927. Instead, they voluntarily, and in the exercise of their own judgment and discretion, applied the joint-line scale. The order of reparation represents the difference between these two scales.

Perhaps the discussion of the case might have been brought within a narrower compass by the simple holding that prima facie the reparation order is valid and supported by sufficient proof, and as no evidence was offered in rebuttal, plaintiff's case was complete. Cleveland, C. C. & St. L. R. Co. v. Blair (C. C. A.) 59 F.(2d) 478. But, in view of the insistence on defendants' part that the commission's findings disclosed the entire proof (which need not be here conceded), we have preferred to treat the case from this standpoint, and thus rest its determination upon the merits. So considered, therefore, we are persuaded the reparation order is valid, and that the ruling of the trial court should be sustained.

The judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.