187 So. 632

**ALABAMA POWER CO. v. CITY OF FORT PAYNE et al.**

**3 Div. 284.**

Supreme Court of Alabama.

Feb. 2, 1939.

Rehearing Granted March 23, 1939.

Steiner, Crum & Weil, of Montgomery, and Martin, Turner & McWhorter, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., C. L. Rowe, Asst. Atty. Gen., and Thos. S. Lawson, of Montgomery, for appellees.

KNIGHT, Justice.

The appellant, Alabama Power Company, prosecutes this appeal from a judgment of the Circuit Court of Montgomery County, denying appellant's petition for a writ of certiorari to the Public Works Board of Alabama.

The petition for the writ of certiorari was duly verified, and disclosed the following facts, among others to which we will hereafter refer: The City of Fort Payne filed its application, under the provisions of the Municipal Revenue Bond Code, Acts 1935, pp. 195–199, with the Public Works Board of Alabama (hereafter referred to as the Public Works Board, or simply as the Board) for the

consent of that Board to the issuance of municipal revenue bonds in the aggregate amount of $73,000 for the partial financing of the construction of a municipal electric distribution system in said city. The application averred that the Public Works Administration had indicated its willingness to purchase such bonds, and in addition to make a grant to said city of $59,727 to complete the financing of the proposed municipal project.

The Public Works Board, on November 30, 1938, held a hearing on the application of the said city, at which time the appellant entered its appearance, and protested the granting of the city's application on the ground that the issuance of the proposed securities would be contrary to the public interest and serve no public need. The appellant at said hearing offered evidence showing that it owned and operated an integrated public utility system extending throughout the State of Alabama, serving some six hundred municipalities and communities in the State of Alabama, including the City of Fort Payne; that its said system is modern and efficient, and sufficient to meet the present needs in electric service in Alabama, and the anticipated future needs; that appellant is the owner of a modern and efficient electric distribution system and other electric facilities in the City of Fort Payne, Alabama, and is, and has been for a number of years, operating such distribution system and facilities, in said City, under a valid and unexpired franchise granted by the city and is rendering efficient and adequate service at reasonable rates to said city and its inhabitants. That the proposed municipal distribution system in the City of Fort Payne will substantially duplicate and parallel the appellant's existing system, and render substantially the same service now rendered by appellant's system.

In further support of its protest before the Public Works Board appellant introduced evidence to show, among other things: That considered apart from the damage to the appellant's integrated system which would result from the destruction of the value of appellant's existing system in Fort Payne, and considered apart from the interest of appellant and the general public in the settlement of the existing competitive situation between appellant and Tennessee Valley Authority, the monetary costs and losses which will accrue to the United States, the State of Alabama, the County of DeKalb, the City of Fort Payne and the appellant by the construction of the municipal system will be greater than the benefits which will accrue to the said city and its inhabitants.

The petition for the writ of certiorari contained the following direct and explicit averment: "Respondent City of Fort Payne did not introduce or offer any evidence in support of its petition for the approval of the issuance of its securities and no other evidence was offered or introduced in support thereof."

At the conclusion of the hearing, the Board entered an order reciting "That the Public Works Board of Alabama hereby finds and determines that the issuance and sale of $73,000.00 principal amount of electric system revenue bonds of 1938 by the City of Fort Payne, Alabama, for the purpose of acquiring by construction or otherwise an electric distribution system, serves a definite and recognized public need and is in the public interest." By order dated November 30, 1938, the Public Works Board granted its consent for the issuance of said bonds. The appellant sought by certiorari to review the findings and order of the Board. The writ was denied by the court below, and from that judgment this appeal is prosecuted.

It is the contention of appellant that the order of the Board of Public Works was made and entered without substantial support in the evidence, or was contrary to the undisputed evidence, or in disregard of legal and competent evidence.

The statute requiring action by the Public Works Board, so far as here material, reads: "Section 14. When required by law, the approval of the State Board of Health with respect to water and sewer systems shall be obtained. No bonds or obligations of any municipality authorized under this Act shall be issued and/or sold until consent to the issuance and sale thereof shall have been given by the Public Works Board of Alabama or in the event no such body is in existence at the time, by the Alabama Public Service Commission, to be evidenced by resolution or order under seal of such body granting such consent. Such consent shall be granted only after a public hearing and after a petition requesting such consent has been duly filed by such municipality with the secretary of such Public Works Board more than five days before such public

hearing. Such petition shall specify the plan or program of the municipality and the uses to which it is proposed to put the proceeds of such issue and such other matters as are necessary fully to advise such Public Works Board of the nature of the corporate purpose in furtherance of which such issue is proposed and said petition shall include such other information as may be required by the rules of such Public Works Board. Such Public Works Board shall grant such consent only after it finds that such issue and/or sale serves some public need, and is in the public interest."

■ We are confronted at the outset with the insistence that appellant had no such interest in the proceedings before the Public Works Board as would confer upon it the right to intervene and contest the application and petition of the City of Fort Payne. We do not think there is merit in this insistence. The appellant showed by its petition that it owns property in the City of Fort Payne and operates there an electric distribution system. While there is absent from the petition a specific allegation that appellant is a taxpayer in said city, yet we know that one cannot own and operate such property without being a taxpayer.

It appears that the appellant was a party to the record in the proceedings before the Board, and was so recognized by the Board. This then brings this case squarely within the principle and rule in the case of St. John et al. v. Richter et al., 167 Ala. 656, 52 So. 465. The record facts and the nature of the proceedings differentiate this case from that of Birmingham Electric Company v. City of Bessemer et al., ante, p. 240, 186 So. 569.

■■ It is obvious that the above quoted statute makes it obligatory upon the Public Works Board to withhold its consent to the issuance and sale of the bonds until a public hearing has been had upon the application therefor, and such consent shall then be granted *only after it finds* that such issue or sale of said bonds *will serve some public need, and is in the public interest.*

No one, we take it, will argue for a moment that the Legislature did not intend, when it employed the word "finds," that such finding shall be made or reached only upon evidence duly submitted to, and considered by the Board. To ascribe to the word *"finds"* any other meaning would do violence to the plain and unambiguous words of the statute.

We, therefore, feel fully justified in concluding that it was the purpose of the act to require the Board to give its consent to the issuance and sale of bonds only after a public hearing has been had, and after receiving sufficient competent evidence to justify it—the Board—in finding that such issue and sale would *serve some public need, and is in the public interest.*

■ If the Board had, in fact, evidence before it tending to show that the issuance and sale of the bonds would serve "some public need, and was in the public interest," it would be wholly immaterial whether such evidence was offered by the City of Fort Payne or by the intervenor. The petition for certiorari clearly shows, by proper averments, that the City of Fort Payne, upon the hearing before the Board, offered no evidence in support of its petition for approval of the issuance of its bonds, and that *no other evidence was offered or introduced in support thereof.*

So that when this petition for certiorari was submitted to Judge Jones, Judge of the Circuit Court of Montgomery County, it was made clearly to appear by that petition that the Board, in total disregard of the statutory mandate, had proceeded in an arbitrary way to grant the city's petition. We say this, because the averments of the petition disclosed that there could have been no *finding* by the Board upon any evidence submitted to them, and the members of the Board *could not supply* the lack of evidence by their unaided opinion that issuance of the bonds would serve a public need and was in the public interest.

It cannot be doubted that the right of the Board to act depended upon the finding of the fact that the issuance of the bonds would serve a public need, and would be in the public interest. If there was no evidence of such fact, there was no jurisdiction to make the order by the Board.

In the case of Railroad Commission v. Louisville & Nashville R. Co., 197 Ala. 161, 72 So. 397, 398, it was observed:

"All legal intendments are with the orders of the railroad commission, and its orders will be upheld unless their invalidity is made to appear. The presumption is that the orders of the commission are

made upon proper evidence and are reasonable. Railroad Commission v. Alabama G. S. R. Co., 185 Ala. 354, 64 So. 13, L.R.A.1915D, 98. But we can imagine no reason for the recital that no testimony was taken if it be not the veritable statement of a fact, made in order to disclose the true foundation of the order, which is in the nature of a judicial judgment, by showing that the commission proceeded to the necessary finding of facts upon its unaided opinion as to the public demand and right in the circumstances presented by the situation at Samson, or perhaps upon information with respect thereto gathered in an informal way from outside sources. Such is the just and reasonable intendment of the recital. We do not pretend that the commission is bound by the strict rules of evidence which obtain in suits between private parties; but, as observed by the Supreme Court of the United States in Interstate Commerce Commission v. Louisville & N. R. Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431, 'the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules * * * by which rights are asserted or defended.'

"The right of the commission to act depended upon the fact, among others, that the proposed connection would furnish sufficient business to justify its construction and maintenance, and, if there was no evidence of this fact, there was no jurisdiction to make the order. 'A finding without evidence is arbitrary and baseless.' To hold that the commission might proceed upon information informally picked up 'would nullify the right to a hearing; for manifestly there is no hearing when the party does not know what evidence is offered or considered and is not given an opportunity to test, explain, or refuse.' 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431, supra. We have no authority to attribute to the order of the commission a virtue it does not profess to have, by eliminating or ignoring its formal recital as surplusage or as contrary to the fact. Hence our conclusion that the order affirmatively shows that it was made without hearing evidence on a fact that could be determined by evidence alone, and so discloses its own excess of power in the premises. The demurrer to the petition was properly sustained."

■■ We do not think it can be doubted that the proceedings authorized to be had before, and by, the Board are of a character quasi judicial, in which due process must be observed, and preserved to all persons whose legal rights may be involved, and concluded by the deliberations and determinations of the Board. Such proceedings require the taking and weighing of evidence, and a finding of fact based upon a consideration of the evidence, and the making of an order supported by a finding upon substantial evidence given before the Board.

■ Nor will any one doubt, we take it, that the "public hearing" provided for in the act "has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts." As observed by Mr. Chief Justice Hughes, in the case of Morgan v. United States, 298 U.S. 468, 56 S. Ct. 906, 911, 80 L.Ed. 1288: "The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The 'hearing' is the hearing of evidence and argument."

At another point in his decision in the above cited case, Mr. Chief Justice Hughes observes: "That duty is widely different from ordinary executive action. It is a duty which carries with it *fundamental procedural requirements*. There must be a full hearing. There must be evidence adequate to support pertinent and necessary findings of fact. *Nothing can be treated as evidence* which is not introduced as such. United States v. Abilene & Southern Ry. Co., supra [265 U.S. 274, 286-290, 44 S.Ct. 565, 68 L.Ed. 1016]. Facts and circumstances which ought to be considered must not be excluded. Facts and circumstances *must not be considered* which should not legally influence the conclusion. Findings based on the evidence must *embrace the basic facts which are needed to sustain the order*. Interstate Commerce Commission v. Louisville & Nashville R. Co. [227 U.S. 88, 91, 33 S.Ct. 185, 57 L.Ed. 431]; Chicago Junction Case, 264 U.S. 258, 263, 44 S.Ct. 317, 68 L.Ed. 667; United States v. Abilene & Southern Ry. Co., supra; Florida v. United States [282 U.S. 194, 212-215, 51 S.Ct. 119, 75 L.Ed. 291]; United States v. Baltimore & O. R. Co. [293 U.

S. 454, 464, 55 S.Ct. 268, 79 L.Ed. 587]." [Italics supplied.]

In the case of United States v. Abilene & S. Ry. Co., supra [265 U.S. 274, 44 S.Ct. 569], the Supreme Court of the United States, in an opinion by Mr. Justice Brandeis, held: "The mere admission by an administrative tribunal of matter which under the rules of evidence applicable to judicial proceedings would be deemed incompetent does not invalidate its order. Interstate Commerce Commission v. Baird, 194 U.S. 25, 44, 24 S.Ct. 563, 48 L.Ed. 860; Spiller v. Atchison, Topeka & Santa Fe Ry. Co., 253 U.S. 117, 131, 40 S.Ct. 466, 64 L.Ed. 810. Compare [United States ex rel.] Bilokumsky v. Tod, 263 U.S. 149, 157, 44 S.Ct. 54, 68 L.Ed. [221]. *But a finding without evidence* is beyond the power of the Commission. Papers in the Commission's files are not always evidence in a case. New England Divisions Case, 261 U.S. 184, 198, note 19, 43 S.Ct. 270 [276], 67 L.Ed. 605. *Nothing* can *be treated* as evidence which is not introduced as such. Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U.S. 88, 91, 93, 33 S.Ct. 185, 57 L.Ed. 431; Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. [667]." [Italics supplied.]

In the case of Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 225, 74 L.Ed. 524, the Supreme Court of the United States observed, in an opinion also rendered by Mr. Justice Brandeis: "It has been settled in cases arising under the Interstate Commerce Act that, if an order rests upon an erroneous rule of law [citing cases]; or is based upon a finding made without evidence [citing cases]; or upon evidence which clearly does not support it [citing cases] the order must be set aside."

The case of Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 318, 68 L.Ed. 667, which involved an order of the Interstate Commerce Commission permitting one carrier to acquire control of another, made under par. 2 of sec. 5 of the amended act to regulate commerce, 49 U.S.C.A. § 5 (2), which allowed this whenever the commission is of the opinion, after hearing, that the acquisition will be in the public interest, is very similar to the case now under consideration. In that case the contention was made that the order was void because there was no evidence to support the finding that the acquisition of control of the terminal railroads by the New York Central *"will be in the public interest."* The court held: "The bill charges, in clear and definite terms, that this finding [by the I. C. C.] was wholly unsupported by the evidence. We must take that fact as admitted for the purposes of this appeal. The allegation is made as one of fact. There is no suggestion in the motions to dismiss (which are both general and special) that this fact is not well pleaded, or that a copy of the evidence introduced at the hearing should have been annexed to the bill. Compare Louisiana & Pine Bluff Ry. Co. v. United States, 257 U.S. 114, 42 S.Ct. 25, 66 L.Ed. 156. Facts conceivably known to the Commission, but not put in evidence will not support an order. * * * Congress by using the phrase 'whenever the Commission is of opinion, *after hearing,*' prescribed quasi judicial action. Upon application of a carrier, the Commission must form a judgment whether the acquisition proposed will be in the *public interest.* It may form this judgment only *after hearing.* The provision for a hearing implies both the privilege of introducing evidence and the duty of deciding in accordance with it. To refuse to consider evidence introduced or to make an essential finding without supporting evidence is *arbitrary action.*" [Italics supplied.]

We are, therefore, at the conclusion, (a) that the intervenor had such an interest in the proceedings before the Board of Public Works as entitled it to intervene in the proceedings there held; (b) that such proceedings required a public hearing; (c) that they have the character of a quasi judicial proceeding, in which the right of due process must not be ignored; (d) that an affirmative finding must have supporting evidence, and (e) that the findings and order of the Board are subject to judicial review to determine whether, in making its determination, it departed from applicable rules of law, and whether its findings had a basis in substantial evidence, or was arbitrary and capricious.

These conclusions seem to be in accord with the overwhelming weight of authority, and we think they are sufficient guides in the further consideration of the questions here presented. Conclusions (a), (b) and (c) are so abundantly sustained by the authorities, and are so obviously

sound, that we think there can be no tenable ground for difference of opinion thereon.

 Of course, the right to the writ should be determined, in the first instance, on the allegations and showing made by the petition, unless the answer sets up matter which affects an exercise of the discretion which the court has to determine whether the writ should issue. But it should here be observed, that if under our statutory system providing for these remedial writs, the court has, in any case, a discretion to grant, or not to grant, the writ, when the petition makes proper showing therefor, no such case is here presented. If the error is manifest, and substantial injury has been sustained, in the absence of any other adequate remedy, the writ should be allowed. 11 C.J. § 84, p. 130.

 "The court usually allows the writ on an inspection of the petition or affidavit, and takes the same as true. Counter affidavits, parol evidence, or even the record of the inferior tribunal, are not considered for the purpose of contradicting the petition or affidavit; and if the latter discloses merit the writ is allowed." Morefield v. Koehn, 53 Colo. 367, 127 P. 234; Scroggins v. State, 55 Ga. 380; Citizens' St. R. Co. v. Heath, 154 Ind. 363, 55 N.E. 744; Short v. Sparrow, 96 N.C. 348, 2 S.E. 233; Ewing v. Filley, 43 Pa. 384; Miller v. Holtz, 23 Tex. 138, 11 C.J. p. 157, § 170.

It is here to be also·noted that the petition for certiorari was heard by the court upon the petition itself, and not upon any evidence aliunde the petition.

In view of our conclusion that the petitioner, Alabama Power Company, had such interest as entitled it to intervene before the Board and contest the order sought, there is then left for determination but one concrete question, and that is whether or not the petition, as presented, to the Judge of the Circuit Court of Montgomery County, made out such a case as entitled it to the writ prayed for? No one will argue, we take it, that the order made and entered by the Board would be valid, if there was no evidence before the Board to support it, and of course, no one would assert its validity if the only evidence offered was to the effect that the issuance and sale of the securities *would*

*not* serve some public need, and was not in the public interest.

The petition, upon which the court acted, alleged:

"A. The finding of the Public Works Board that the issuance of said securities would be in the public interest and would serve a public need was entirely without support in evidence of record before such Board.

"B. The finding of the respondent Board that the issuance of said securities would be in the public interest and would serve a public need was contrary to the undisputed evidence of record before such Board.

"C. The finding of the respondent Board that the issuance of said securities would be in the public interest and would serve a public need was purely arbitrary."

It is true that the petition avers that at the hearing before the Board the petitioner "duly entered its appearance and its protest against the granting of such petition (petition of City of Fort Payne) and adduced and entered of record evidence showing the above facts and further evidence to the effect that the issuance of the proposed securities would be contrary to the public interest and serve no public need, such evidence being * * *; (4) that considered apart from the damage to petitioner's integrated system which would result from the acquisition of, or the destruction of the value of, petitioner's existing system in Fort Payne, and considered apart from the interest of petitioner and the general public in the settlement of the existing competitive situation between petitioner and T. V. A., the monetary costs and losses which will accrue to the United States, the State of Alabama, the County of De-Kalb, the respondent City and the petitioner by the construction of the municipal system will be greater than the benefits which will accrue to the respondent city and its inhabitants."

The last above quoted statement from the petition for certiorari would not justify us in reading into the record of the proceedings before the Board that there was evidence from which the Board could have reached a conclusion contrary to the positive and explicit averments of the petition. Especially is this true as we find, immediately following the above quoted statement, the following averments: *"Re-*

*spondent City of Fort Payne did not introduce or offer any evidence in support of its petition for approval of the issuance of its securities and no other evidence was offered or introduced."*

■ We cannot give our assent to the proposition that when evidence is offered on issues before the Public Works Board, regardless of the legal effect of such evidence, this court will not review a finding supposedly based thereon, regardless of whether such finding is wholly without support in the evidence that was offered. While we concede that the Public Works Board is not to be hampered, or bound, by any procrustean rule of evidence, yet it can make no finding of fact in the absence of evidence, nor can it make a finding directly opposed to the undisputed evidence. To so hold, would not only be contrary to our holding in the case of Western Railway of Alabama et al. v. Montgomery County, 228 Ala. 426, 153 So. 622, and also contrary to the holding of the Supreme Court of the United States in the cases of Southern Ry. Co. v. Commonwealth of Virginia, 290 U.S. 190, 54 S.Ct. 148, 78 L.Ed. 260, and Interstate Commerce Commission v. Louisville & N. R. Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431, but would also be contrary to, and in utter disregard of, the right of the intervenor, appellant here, *to a hearing* and *procedure upon due proof.* To justify such a finding by the Board would be, in legal effect, to say that an administrative board, of the nature and character of Public Works Board, may legally do what the courts are prohibited by the Constitution from doing, viz, that such Boards may, by their arbitrary orders, deprive a citizen of due process of law.

■ The petition for certiorari, fairly read and construed, excludes any possible theory that the Board had before it any evidence *whatsoever* to support its finding, and, therefore, its order was arbitrary, and amounted to usurpation of power.

■ But it may be argued that inasmuch as there is an averment in the petition that the monetary "costs and losses which will accrue to the United States, the State of Alabama, the County of De-Kalb, the respondent city and the petitioner by the construction of the municipal system *will be greater than the benefits which will accrue* to the respondent City and its inhabitants," that this state-ment shows that there was evidence before the Board that benefits would accrue to the City of Fort Payne and its inhabitants, and was sufficient to sustain the order of the Board. This conclusion, we submit, would be fallacious and unwarranted. Furthermore, if we should concede, which we do not, that there was some evidence that benefits might accrue to the City of Fort Payne and its inhabitants, that fact, standing alone, would not justify the order. The statute inhibits the Board from giving its consent to the issuance and sale of the securities until it, the Board, shall find, not simply that benefits will accrue to the city and its inhabitants, *but until* the Board shall find that the issuance and sale of the securities will *serve some public need, and is in the public interest.* These conditions, upon which the statute authorizes the Board to give its consent, are explicit and controlling. Until the Board finds that each of these named conditions exists, no power is conferred upon it to grant consent.

So, then, conceding for the sake of argument that benefits may, and will accrue, this fact cannot quicken into exercise the statutory powers of the Board, those powers must remain inactive until a proper petition showing that the issue and sale of the bonds will serve some public need and is in the public interest is filed, and upon the hearing proof is offered to sustain the averments of the petition. The fact that benefits will accrue is but a part of the proof required.

We may concede that the Board could well act upon the assumption, without evidence before it, that electric service to the public by a utility serves a public need. But that was not the entire issue before the Board. The Board cannot give its consent to the issuance of the municipal bonds, until it finds not only that the issuance of the bonds, in the given case, serves some public need, *but also is in the public interest.* It may be that the issuance will serve some public need, and will be in the public interest in some cases, and not so in other instances. The Board cannot assume, in the absence of all evidence, that the construction of a municipal electric system would serve a public need, and is in the public interest, in any case, notwithstanding there may be then operating in the municipality an electric system furnishing adequate service, at reasonable costs to the consumers. If the Board was in fact clothed with such power, then may

we not inquire just why the Legislature imposed the explicit condition that the consent should not be given until the Board should *find* that the issuance of the bonds would serve some public need, and be in the public interest? This is a pertinent question, and cannot be overlooked. The question, we think, answers itself.

One of the reasons why the Legislature required that the Board should make this finding, was its very laudable purpose to guard against the wholesale and indiscriminate issuance and sale of bonds by municipalities, when there was no real necessity therefor. No doubt there were other good and impelling reasons. At all events the Legislature saw proper to limit the issuance and sale of municipal bonds to cases involving a public need, and the public interest.

The question involved in this case is wholly unlike the question involved and settled in the case of Alabama Power Co. v. City of Guntersville et al., 235 Ala. 136, 177 So. 332, 114 A.L.R. 181. The present writer wrote the opinion in that case. The conclusion there reached was sound, and the writer has no disposition to depart from it, or to qualify it. But·here quite a different question is presented. In this case, the circuit court has by its holding shut the door to an aggrieved party, although such party had an interest in the matter litigated. We cannot subscribe to any holding which in legal effect denies to an interested citizen, whether natural or artificial, his day in court. To do so, would violate every principle of natural justice and right vouchsafed by the Constitution to every person coming within the jurisdiction of the state.

In conclusion, may we say that if there was evidence before the Board showing, or tending to show, that the issuance and sale of the municipal bonds in question served a public need, and were in the public interest, no doubt the Board's records will show it, as well as the nature of the evidence. Therefore, it would seem that no possible injury would, or could result to petitioner city by the granting of the writ of certiorari; whereas the injury to the intervenor, if the writ and hearing thereon are denied, might be irreparable. Intervenor is entitled to its day in court.

It is our considered judgment, and we so hold, that the circuit court committed error in denying the preliminary writ of certiorari as prayed, and for this error the judgment must be reversed, and one here rendered remanding the case with direction that the court grant the writ, and proceed to a hearing thereon upon its merit. Rehearing granted.

Reversed with directions, and remanded.

All Justices concur, except BOULDIN, J., not sitting.

FOSTER, Justice (concurring).

I wish to concur fully in the foregoing opinion, but I think an explanation of my apparent change of views in this case is in order, since I wrote the opinion affirming the judgment, which has been withdrawn, and for which the foregoing is now substituted.

It was thought by me that since it is not necessary in any tribunal acting in a judicial capacity to prove matters which are judicially known (Anderson v. Board of Dental Examiners, 27 Cal.App. 336, 149 P. 1006; 23 Corpus Juris 172, section 2004; Atchison, Topeka & Santa Fe Ry. Co. v. United States, 284 U.S. 248, 262, 52 S.Ct. 146, 150, 76 L.Ed. 273), that the board in this instance could treat as evidence introduced those matters thus known, and that when so considered in the light of the evidence which was placed before it, as alleged in the complaint, we should not say that the complaint shows that its finding was wholly unsupported by the evidence.

But it did not occur to me that there was involved a situation which amounted to a denial of procedural due process if those matters thought to have been judicially known, and so to have been considered, were not set out either in the findings or record of the proceedings so that on review by a court it would "know the particular or evidential facts of which the commission took judicial notice, and on which it rested its conclusion," so as to "challenge the deductions made from them," for that it is not "possible for the appellate court to review the law and the facts and intelligently decide that the findings of the commission were supported by the evidence when the evidence that it approved was unknown and unknowable," and "a hearing is not judicial, at least in an adequate sense, unless the evidence can be known." All of this is essential to procedural due process as discussed by Justice Cardozo for the court in Ohio Bell Tel. Co. v. Public Utilities Commis-

sion, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093.

It is also said that: "Where a party relies on the judicial knowledge of the trial judge as to local conditions, he must in some form procure that knowledge to be brought into the record, so that an appellate court may rely on it, for the general rule is that if the attention of the trial court is not called to a fact within its judicial knowledge and such fact is not judicially noticed, the appellate court will not take judicial notice of it." 15 R.C.L. 1063, section 6; Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So. 553. For it is said that "judicial notice" and "judicial knowledge" are not identical. Shapleigh v. Mier, 299 U.S. 468, 57 S.Ct. 261, 81 L.Ed. 355, 113 A.L.R. 253. However, this theory has not always been given full force.

There is nothing here alleged to indicate that matters which may have been judicially known were brought to the attention of the board and in some form put in the record so that we may, on review, know upon what the board acted other than the evidence which was offered.

Without the aid of judicial knowledge, I agree that the evidence before the board, as alleged in the petition for certiorari, is such as that the writ should have been granted. I pretermit consideration of the difficulty which a court has in a proceeding to review by certiorari the board's finding upon the facts as pointed out in Ex parte City of Birmingham, 199 Ala. 9, 74 So. 51; City of Birmingham v. Southern Bell Tel. & Tel. Co., 203 Ala. 251, 82 So. 519; Federal Credit Co. v. Zepernick Grocery Co., 153 Miss. 489, 120 So. 173. This will be presented on final hearing after there has been a return of the writ.