36 So.2d 523

**ALABAMA ELECTRIC COOPERATIVE, Inc., et al. v. ALABAMA POWER CO.**

**3 Div. 497.**

Supreme Court of Alabama.
July 31, 1948.

See, also, 36 So.2d 533.

A. A. Carmichael, Atty. Gen., and Silas C. Garrett, III, Asst. Atty. Gen., and Marion Rushton, J. M. Williams, Jr., and Rushton, Stakely & Johnston, all of Montgomery, for appellants.

Steiner, Crum & Weil, of Montgomery, Powell, Albritton & Albritton and Robert B. Albritton, all of Andalusia, Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, and Edwin I. Hatch, of Montgomery, for appellee.

SIMPSON, Justice.

This appeal brings up for consideration § 155, Title 55, Code 1940, and a review of certain proceedings transacted thereunder wherein the appellant Alabama Electric Cooperative, Inc., filed its petition before the Department of Finance of Alabama seeking the consent of the department to issue and deliver to the United States of America the Cooperative's notes aggregat-

ing $5,516,600 for the purposes enumerated in the petition. Review was brought before the circut court by a petition for common law certiorari with prayer for a declaratory judgment and alternative writ of mandamus, which procedure is not questioned.

This appeal is from a final judgment of the circuit court in that review proceedings, which resulted in the vacating and annuling of an order of the Director of Finance, purportedly entered under authority of said § 155, wherein the consent of the Department of Finance was granted to issue the notes as prayed for in the Cooperative's petition. The circuit court in annuling and expunging from the record the said order of the Director of Finance ordered and adjudged that a previous order of the Chief of the Division of Local Finance of the State Department of Finance denying the Cooperative's petition and withholding the consent of the department for permission to issue the said notes to be the only legal, valid, and binding order.

The merits of the controversy and the right vel non to have the consent of the Department of Finance to issue the notes is not here for consideration. The matter is one of jurisdiction and the main question is to determine the authority and power of these public officials concurrently conferred by said § 155.

The section, with supplied emphasis, pertinently reads: "No bonds or other evidences of indebtedness of * * * any electric membership corporation * * * shall be issued or sold until the consent to the issuance and sale thereof shall have been given by the department of finance, to be evidenced by the written approval of the director of finance *or the chief of the division of local finance.* * * *"

The appellant W. H. Drinkard was, when these proceedings were instituted, and is the duly appointed and acting Director of of the Department of Finance and J. P. Shaffer was, and had been for about eighteen months previously when the incidents hereafter noticed took place, the duly appointed and acting Chief of the Division of Local Finance of the Department of Finance. The particular matter under con-

sideration, that is, the determination of whether or not the Cooperative would be given permission to issue the notes aforesaid, was properly within the jurisdiction of the Division of Local Finance as set up under Article 6 of the statute relating to the Department of Finance (Title 55, §§ 151–155, Code 1940) and during Shaffer's incumbency in that office all such matters had been handled exclusively by him, his orders having theretofore been the final ones of the department and entered without interference or direction from the Director of Finance, in whose whole department were many and various divisions under the supervision and control of said Director, including the Division of Local Finance.

After the filing of the petition by the Cooperative seeking consent to make the loan from the United States, the Alabama Power Company, a public utility largely concerned in the area in which the Cooperative proposed to expend the money to expand its operation, filed its petition for permission to and did intervene as an interested party in the proceeding to contest the petition. Thereafter the case proceeded between the Cooperative and the Power Company as a hotly contested case, with Shaffer, as the Chief of the Division of Local Finance, alone presiding and hearing the evidence adduced at the trial. The trial lasted two days and much testimony, with many exhibits, was presented at the hearing for the consideration of this official in determining whether the consent of the department should be given or withheld. Shaffer alone presided and heard the case. The Director of Finance, Drinkard, was in no way officially connected with the hearing.

This hearing took place October 6th and 7th, 1947, and on October 29th Shaffer, as Chief of the Division of Local Finance, in keeping with the usual practice and as the statute (§ 155) authorized, entered a formal written order in the case and placed it in the minute book of the department, as orders of this character were usually placed. This order denied the consent of the department for the issuance of the notes as prayed for by the Cooperative on the statutory ground that "the issuance of said notes

will not serve a public need and is not in the public interest." This conclusion was rested on due findings of fact from the evidence taken at the hearing and was in accordance with the prescription of the statute which directs the basis on which the consent of the department must be granted in such cases (§ 155).

After the due enrollment of this order in the minute book of the Local Division of the department, Drinkard, as Director, took action in the case too. His first step was a purported order the same day and, according to the testimony of his secretary, prepared by her a few minutes after the enrollment of Shaffer's order. This order of Drinkard recited:

October 29, 1947

"In the Matter of the Petition of Alabama Electric Cooperative, Inc. Requesting Consent of the Department of Finance to Issue and Deliver to United States of America Its Note in the Aggregate Principal Amount of $5,516,600.00, after Conference with the Governor and the Chief of the Division of Local Finance, I Am Hereby Rendering My Decision in Favor of the Alabama Electric Cooperative, Inc., thus Overruling the Decision of the Chief of the Division of Local Finance.

W. H. Drinkard (Bill)
W. H. Drinkard (Bill)
Director of Finance."

Thereafter, dated the same day, though Drinkard testifies it was prepared the following day, another order with more formality was likewise signed by Drinkard to the same effect and purporting to grant consent to the Cooperative to issue the notes.

The present proceedings were instituted by the Power Company (appellee) to have these Drinkard orders expunged and annulled of record and Shaffer's order validated. The trial court acted favorably on the appellee's petition and ordered the annulment of both of Drinkard's orders and the reinstatement of the Shaffer order. Hence, this appeal.

█ Before reaching the main question, we are met at the threshold of the inquiry by the contention that the Power Company had no right to invoke the aid of the court in contesting the action taken by Drinkard;

that the proceedings before the department were of an executive or legislative character and that the Power Company had no such interest or right as to give it standing in a court of Law to thus contest the action of the Director of Finance.

Not much stress was laid on this insistence on original submission, but the point is now urged in appellant's reply brief, and, were the question an open one in this jurisdiction, it might pose some difficulty. However, as we see it, the case of Alabama Power Company v. City of Fort Payne, 237 Ala. 459, 463, 187 So. 632, 635, 123 A.L.R. 1337, is completely decisive against the contention of the appellants on this issue. The present statute (§ 155) is in substance the same as the statute there construed, where this court, speaking through the late Justice Knight, said:

"We are confronted at the outset with the insistence that appellant had no such interest in the proceedings before the Public Works Board [now Department of Finance] as would confer upon it the right to intervene and contest the application and petition of the City of Fort Payne. We do not think there is merit in this insistence. The appellant showed by its petition that it owns property in the City of Fort Payne and operates there an electric distribution system. While there is absent from the petition a specific allegation that appellant is a taxpayer in said city, yet we know that one cannot own and operate such property without being a taxpayer.

"It appears that the appellant was a party to the record in the proceedings before the Board, and was so recognized by the Board. This then brings this case squarely within the principle and rule in the case of St. John et al. v. Richter et al., 167 Ala. 656, 52 So. 465. The record facts and the nature of the proceedings differentiate this case from that of Birmingham Electric Company v. City of Bessemer et al., 237 Ala. 240, 186 So. 569."

To attempt to make a distinction, in principle, between that case and the instant one would be a distinction without a difference. Though the two statutes are not altogether identical, the rule theorized in the Fort Payne case would control both. The question is one of public interest. The money coming from the United States would be expended in constructing a power plant and lines, ultimately looking toward serving Power Company, as well as other, customers in that area. The Power Company, as a state taxpayer, is not only a member of that public, but has a peculiar interest, more than the ordinary public because of its present facilities, allegedly fully capable of affording at less cost that which the Cooperative proposes to procure by the loan. A public need, according to Shaffer's findings, would not be served by an unnecessary duplication of facilities at the expense of the public users, nor, according to his findings, would it be in the public interest. As the adversary intervenor in the proceedings before the department, the appellee is in a position to and has a right to protect the public against this unnecessary and expensive duplication of facilities, as well as to protect its own investment when that investment is able and the owner is willing to supply the demand at a less cost to the consuming public. Under the Fort Payne decision we think the court is strictly committed to the proposition that the appellee, having thus become a party to the proceedings before the Department of Finance and having been recognized as an adversary intervenor therein, is such interested party as has a right to contest and have corrected, if unlawful, the action of Drinkard in the premises.

We come now to the main question in the case. Could Drinkard, having taken no part in the hearing of the case, as Director of the department arbitrarily supersede the action of the Chief of the Division of Local Finance and supplant the Shaffer order for his own judgment and decision in the case, as he attempted to do? A determination of the exact nature of the proceeding before the Department of Finance will resolve the question.

In material respects § 155 is identical with § 8 of Act No. 65, General Acts 1935, pp. 151–153, dealing with the Public Works Board of Alabama. That original act required the consent for the issuance of such evidence of indebtedness by the said Board, to be evidenced by a resolution or order of the Board granting such consent, whereas presently § 155 requires the consent of the

Department of Finance "to be evidenced by the written approval of the director of finance *or the chief of the division of local finance*." There is no substantial difference in the two sections as here pertinent. We wrote about this section as regards the Public Works Board in the Alabama Power Company v. City of Fort Payne case.

Only after a public hearing, on petition duly filed, and after a finding that the issuance of the notes would serve some public need and be in the public interest, can the consent of the department be granted. This provision for a public hearing and a decision based on evidence there adduced clearly prescribes judicial rather than executive action. The investigation of facts as a basis of official action by the department is not a mere ministerial duty, but invokes the exercise of judgment or discretion, the usual test by which to determine whether an act is ministerial or judicial. Within the class of quasi judicial acts must fall the decision as to whether or not the consent of the Department of Finance should be granted to the applicant. Alabama Power Company v. City of Fort Payne, supra; Harden v. City of Raleigh, 192 N.C. 395, 135 S.E. 151; Little v. Board of Adjustment, 195 N.C. 793, 143 S.E. 827.

In the above Alabama Power Company v. City of Fort Payne case, in speaking of the character of proceeding prescribed by the statute and of the nature of the action required thereunder, this court said:

"We do not think it can be doubted that the proceedings authorized to be had before, and by, the Board are of a character quasi judicial, in which due process must be observed, and preserved to all persons whose legal rights may be involved, and concluded by the deliberations and determinations of the Board. Such proceedings require the taking and weighing of evidence, and a finding of fact based upon a consideration of the evidence and the making of an order supported by a finding upon substantial evidence given before the Board.

"Nor will any one doubt, we take it, that the 'public hearing' provided for in the act 'has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts.' * * *

* * * * * *

"We are, therefore, at the conclusion, (a) that the intervenor had such an interest in the proceedings before the Board of Public Works as entitled it to intervene in the proceedings there held; (b) that such proceedings required a public hearing; (c) that they have the character of a quasi judicial proceeding, in which the right of due process must not be ignored; (d) that an affirmative finding must have supporting evidence, and (e) that the findings and order of the Board are subject to judicial review to determine whether, in making its determination, it departed from applicable rules of law, and whether its findings had a basis in substantial evidence, or was arbitrary and capricious.

"These conclusions seem to be in accord with the overwhelming weight of authority * * *. Conclusions (a), (b) and (c) are so abundantly sustained by the authorities, and are so obviously sound, that we think there can be no tenable ground for difference of opinion thereon." 237 Ala. 464–466, 187 So. 636.

◼ On the basis of the conclusion that the proceedings before the department, presided over by Shaffer, as Chief of the Division of Local Finance, were of a quasi judicial nature, and his action on the Cooperative's petition, after hearing the evidence, essentially judicial rather than executive, it is quite manifest that the other officer (Drinkard), who had only concurrent authority in the matter and who was in no way officially connected with the proceedings, could not thus override Shaffer's decision after he had been allowed to take jurisdiction and had presided over, heard, considered, and determined the matter.

◼ True, §§ 64 and 65 of Title 55 vest in the Director of Finance the general supervision and control over the department, but we think this is as regards executive and administrative matters, and the right to supervise the proper functioning of the various divisions. Section 155, however, commits to these two officials concurrent judicial power to hear and decide in a

proceeding essentially judicial, and is a special statute dealing with the specific subject, and must control over the other, general law. Miller v. State, 249 Ala. 14, 21, 29 So.2d 411, 172 A.L.R. 1356; State v. Elliott, 246 Ala. 439, 440, 21 So.2d 310; Downing v. City of Russellville, 241 Ala. 494, 503, 3 So.2d 34.

So far as we can find, in the numerous sections of the law dealing with the Department of Finance, only two (§§ 152 and 155) confer concurrent authority on a division chief to hold public hearings and make decisions and that official is the Chief of the Division of Local Finance. He is a state officer, required by law to take the constitutional oath of office (§ 71, Title 55), as is the Director of Finance, and we do not think, as regards the matter reposed in him by § 155, he could be regarded as a mere clerk or subordinate of the Director when once his jurisdiction over the case had attached. We believe it would do violence to logic, as well as principle, to hold that in this important quasi judicial proceeding the Director of the department, with only concurrent authority, who did not hear the case, could intercept or override the decision of this officer directing a specific division where the matter is properly pending, who had presided thereover, and had rendered his decision.

Also true, the petition of the Cooperative properly should have been and it was addressed to the Department of Finance; and, we may add, Drinkard, as the Director of the department, in his supervisory capacity, could have, initially, taken jurisdiction and heard the matter to the exclusion of the Chief of the Local Division, had he so desired; but this he did not do. The Local Division was the subdivision of the Department of Finance in which such petition was properly to be heard and considered, and the matter having been thus committed to and heard and determined by such division chief, on whom was conferred this concurrent authority, his jurisdiction could not thereafter have been lawfully supplanted.

This holding is squarely within the principle that one acting in a judicial capacity, having first assumed jurisdiction in the proceeding, must act to the exclusion of another official, invested only with concurrent authority. Such is the decision of all of the cases. Allen v. Investors Syndicate et al., 247 Ala. 386, 390, 24 So.2d 909; State v. Black, 239 Ala. 644, 647, 196 So. 713; Monroe County Bank v. Smith, 223 Ala. 53, 54, 134 So. 797; Ex parte Burch, 236 Ala. 662, 665, 666, 184 So. 694; Gay v. Brierfield Coal & Iron Co., 94 Ala. 303, 308, 11 So. 353, 33 Am.St.Rep. 122; Lassiter v. Wilson, 207 Ala. 669, 670, 93 So. 598.

The philosophy of the rule is posed in apt language by Mr. Chief Justice Cooley in the case of McLean v. Speed, 52 Mich. 257, 258, 18 N.W. 396, 397, quoted approvingly in Allen v. Investors Syndicate, supra [247 Ala. 386, 24 So.2d 912]: "It is a familiar principle that when a court of competent jurisdiction has become possessed of a case its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate authority, is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and, while its observation might be required on the grounds of judicial comity and courtesy, it does not rest upon such consideration exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. * * *"

The same rule, of course, controls in an administrative proceeding, in essence judicial, such as the one prescribed by § 155, and considerations of policy or directions from higher executives are without play to control decision of the arbiter who presides at such a hearing.

The rationale of this principle was underlined in the Fort Payne case, where it was said "the 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The 'hearing' is the hearing of evidence and ar-

gument," quoting Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288.

In the Morgan case, in pointing out that the proceedings there under consideration undertaken before the Department of Agriculture were not one of ordinary administration, conformable to the standards governing duties of a purely executive character, the court speaking through Mr. Chief Justice Hughes, said: "There is thus no basis for the contention that the authority conferred by section 310 of the Packers and Stockyards Act [7 U.S.C.A. § 211] is given to the Department of Agriculture, as a department in the administrative sense, so that one official may examine evidence, and another official who has not considered the evidence may make the findings and order. In such a view, it would be possible, for example, for one official to hear the evidence and argument and arrive at certain conclusions of fact and another official who had not heard or considered either evidence or argument to overrule those conclusions and for reasons of policy to announce entirely different ones. It is no answer to say that the question for the court is whether the evidence supports the findings and the findings support the order. For the weight ascribed by the law to the findings—their conclusiveness when made within the sphere of the authority conferred—rests upon the assumption that the officer who makes the findings has addressed himself to the evidence and upon that evidence has conscientiously reached the conclusions which he deems it to justify. That duty cannot be performed by one who has not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. The one who decides must hear." 298 U.S. 481, 56 S.Ct. 911.

The beneficence of this salutary legal doctrine is implicitly illustrated in this case and serves to lamp and adorn the tortuous path of administrative law not yet fully lighted, if, as testified by Shaffer, superior official pressure for reasons of policy was sought to be exerted to influence a contrary decision and then, failing, conduced to finally usurp his authority and override his decision. Without weighing the verity of any testimony, it is but a trite truism to assert that the law would condone no such status, meanwhile prescribing for a public hearing and a finding on evidence duly taken in an important regulatory proceeding before a state officer to whose divisional agency and decision this particular matter had been by law reposed for judicial determination.

■■ Short of the main point, and less stressed, is the argument that the trial court erred in refusing to permit proof that Shafer's order was not intended as a final one, but was merely an expression of his views in the case. The court correctly inhibited this proof. Judicial records import absolute verity and are not subject to contradition in collateral proceedings by extraneous evidence. Laird v. Columbia Loan & Investment Co., 216 Ala. 619, 114 So. 208; Fayerweather v. Ritch, 195 U.S. 276, 306, 307, 25 S.Ct. 58. 49 L.Ed. 193.

The same general rule pertains to a judgment rendered by an administrative tribunal invested with judicial power. The order entered and enrolled by Shaffer was his solemn judgment after hearing the evidence, and was not subject to be so impeached. Chicago, B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 593, 27 S.Ct. 326, 51 L.Ed. 636; United States v. Morgan, 313 U.S. 409, 421(3), 422, 61 S.Ct. 999, 85 L. Ed. 1429. See also 5 Wigmore, Evidence, 2d Ed., 106–108, §§ 2348 and 2349.

The rulings of the circuit court were free of error.

In view of the conclusions reached, it becomes unnecessary to consider separately the various assignments of error.

Affirmed.

All the Justices concur except STAKELY, J., not sitting, having been of counsel.