41 So.2d 574

## McFARLAND v. McKEE.

### 3 Div. 535.

Supreme Court of Alabama.

June 23, 1949.

A. A. Carmichael, Atty. Gen., and L. E. Barton and Hugh F. Culverhouse, Asst. Attys. Gen., for appellant.

Adams & Gillmore, of Grove Hill, and Rushton, Stakely & Johnston, of Montgomery for appellee.

FOSTER, Justice.

The substance of the question involved on this appeal is whether the director of the Highway Department can so bind himself by contract with a highway construction contractor or by promulgating a rule applicable to such contract as to prevent him from agreeing with such contractor by supplemental agreement as to a matter which is a cause for a reasonable difference of opinion.

It is necessary to state enough of the facts to understand the question.

After pursuing the customary method calling for bids on a piece of highway construction, the contract was awarded to appellee. He was to receive twenty-seven and one-half cents per cubic yard for 392,600 cubic yards of common excavation It was supposed that it would all be classed as common excavation.

The standard specifications had the following provisions:

"208.02. Classification. Roadway and Drainage Excavation shall include all materials, of whatever nature encountered except water or other liquid and will be paid for under the item of Unclassified Excavation or such of the pertinent classified items of Solid Rock Excavation, Common Excavation, Stripping Excavation, Channel Excavation, as are listed in the Proposal, which classifications are, for the purpose of estimating and payment, defined as follows:

**436**

"(1) Solid Rock Excavation. This Classification shall include all rock in ledges, bedded deposits and unstratified masses, in its original position, that in the opinion of the engineer cannot be excavated without the continuous use of explosives and/or by the proper use of a current model power shovel of one cubic yard or more capacity; and shall also include detached boulders and rock measuring thirteen cubic feet or more in volume. It shall not include material surrounding such boulders that is designated in the Common Excavation Classification.

"(2) Common Excavation. This Classification shall include all loam, sand clay, chert, gravel (loose or cemented), shale, slate, decomposed rock, old gravel, chert, or broken stone surfacing, and all other material encountered that are not included in the Solid Rock Excavation Classification as above defined."

It was not anticipated that solid rock would be found to be excavated under the contract. There was a provision for "extra work", as follows:

"1.27. Extra Work. Work or material, the performance or furnishing of which is found necessary for proper completion of the improvement and, which in principle is an obligation of the contractor, but which is not covered by any item in the bid schedule in the Proposal and for which no means of payment, direct or indirect, has been provided in the contract, and which is an obligation for which special remuneration, by an 'Extra' price or by other consideration, in any case to be duly negotiated, or by 'Force Account', shall be paid to the contractor."

There was a special provision inserted in this contract, as follows:

"All lime rock, shell rock or Selma chalk common in this vicinity, encountered on construction, shall be classified as and paid for as common excavation."

During the progress of the work the contractor found formations which in his judgment, although they were lime rock, shell rock or Selma chalk, they were not common in that vicinity, but required explosives and/or the use of a current power shovel of one cubic yard or greater capacity, which he claimed was not stipulated in the contract for payment, but which in principle the contractor was obligated to remove, and for which special remuneration should be paid as an "extra".

Although the sufficiency of the petition on demurrer is before the Court, we prefer to go at once to the real issue of law and fact as set up in the answer. It denies that the formations of lime rock, shell rock and Selma chalk encountered were not such as were common in that vicinity. It admits that 4076 cubic yards of solid rock were encountered and were paid for at a dollar and a half per cubic yard, but denies that 24,287 of socalled "hard material" should have been included in the supplemental agreement at seventy cents or any other price. The answer made the following allegations:

"Defendant denies that said, 'supplemental agreement' was authorized in the premises by the said 'standard specifications,' in law or in fact, and for answer says that said 'supplemental agreement' was entered into without the signature, approval, endorsement, knowledge, or consent of the State Construction Engineer, towit, Mr. Marvin Taylor, who now holds and has held such office at all times material to matters herein involved and who expressly refused to approve the said 'supplemental agreement,' and for further answer says that paragraph 4.04 of said 'standard specifications' provides in pertinent part that 'extra work shall be done under the supervision of the engineer and his decision shall be final and binding. The plan of the work to be followed, the equipment to be used, and the amount and character of labor to be employed shall meet with his approval', whereas paragraph 1.06 of said 'standard specifications' defines the noun 'Engineer', as used in said specifications as: 'The State Construction Engineer for the Director, or his authorized representative, acting within the scope of the authority and/or the particular duties entrusted to him'. Defendant further denies that 'the State Highway Department directed the plaintiff to proceed with the excavation of said masses', as alleged in paragraph 4 of said petition, and denies that there was any agreement at that time that unit prices for 'un-

classified excavation' would later be agreed upon 'in the light of actual experience', and defendant demands strict proof of that allegation and averment, and for answer says that paragraph 9.04(D) of the said 'standard stipulations' provides that 'no extra work will be paid for unless unit prices or wages have been agreed upon in writing before such work is started.' "

A demurrer was sustained to the answer, and defendant then plead the general issue to the petition.

The highway director allowed and paid the claim of the contractor, but upon complaint by the chief examiner of accounts, he deducted the amount of the same from other sums due the contractor, the correctness of which is not disputed.

The director is the party to whom the mandamus is directed, but his evidence was favorable to the contractor evidencing a belief that the contractor's claim is just.

As referred to in the answer, the contention is that the State construction engineer is the only authority under the specifications and contract to determine whether the claim of the contractor for extra work was just and reasonable, and that such determination could not be made by the director with the approval of the governor.

The term engineer in the specifications is "the State construction engineer for the director, or his authorized representative". That was Marvin Taylor.

The specifications provided that "extra work shall be done under the supervision of the engineer and his decision shall be final and binding," and section 5.01 was as follows:

"5.01. Authority of the Engineer. All the work shall be done under the direct supervision of the engineer. To prevent misunderstandings, disputes, and litigation, the engineer shall decide any and all questions which arise concerning the quality and acceptability of materials furnished and work performed, the manner of performance and rate of progress of the work, interpretation of the plans and specifications, and the acceptable fulfillment of the contract on the part of the contractor. The engineer will determine the amount, quantity, character, classification, and quality of the several kinds of work performed and materials furnished which are to be paid for under the contract, and his decision and estimate shall be conclusive and binding on both parties thereto and such decision and estimate of the engineer, in case any question arises, shall be a condition precedent to the right of the contractor to receive any money due him under the contract. Explanations concerning the meaning of the plans, specifications or contract, all directions necessary to complete or make definite the plans, special provisions, specifications or contract and give them due effect, will be given by the engineer and his findings shall be final and binding on both parties hereto. The engineer shall have executive authority to enforce and make effective such decisions and orders as the contractor fails to carry out promptly. He shall decide disputes and mutual rights between contractors under the specifications. The engineer is not authorized to increase the obligation of the State to the contractor, except in strict accordance with the terms of these specifications."

The defendant offered to prove that Marvin Taylor, who was the State construction engineer, refused to approve the supplemental agreement for that it was illegal and void. The court sustained the objection. Of course it remains that he did not sign an approval of that agreement. That is shown by the agreement itself.

The director testified:

"At the time the construction was performed Mr. Villadsen was division engineer in division six, with home office at Grove Hill. This contract was in that division, and as division engineer at the time, the work was done, and under his supervision. At the time the claim came up for a ruling in the general office here in Montgomery, Mr. Villadsen had been made chief engineer in charge of the Engineering Department of the Highway Department. Various engineers had expressed directly, and indirectly to me their opinion as to the type ground or dirt located in the various areas excavated. There was as many differences in opinion as there were engineers expressing opinions. As I had previously trained as a lawyer and not as an engineer.

438

I had depended exclusively on the engineers who are employed by the Highway Department to do the estimating. When the claim was filed, it was filed in the routine manner, nothing unusual, in fact nothing complicated about the claim, just a question of coming to some sort of agreement. I sided with Mr. Villadsen. The amount of the various engineers recommendation to be paid ran anywhere up to $40,000.00. I sided with Mr. Villadsen because he was chief engineer and had more knowledge of the work performed, as it was done under his supervision and performance.

"Q. Is that your usual practice? A. Yes, I never pass on them without consulting the engineers; and I never investigate, sign.

"Q. It is your decision? A. It is my decision, I signed the contract, the investigating was done by the engineers.

"Q. Do you remember the details of this claim? You may refresh your recollection. A. Yes, the claim was originally based on instructions which I understand were given to McKee prior to the time I became Highway Director, was to be based on the cost of what it cost him, no matter, using the best equipment, etc. The amount of the claim, and I confirmed that, and those were the instructions given him. We thought the figure given entirely too high; none of the engineers thought that a correct figure, and instead we were going to base it on a cost per yard basis, based on the costs to permit the local use of dynamite. I think that anything requiring a shovel of not more than three-quarters was classified as common excavation.

"Q. Before that you were not interested in the geological type, but in the question of what it took to move it? A. That is right.

"Q. You did determine the amount, tell the court about that? A. It was based on 4076 cubic yards of solid rock, the settled agreement, on a basis of $1.50 per cubic yard. It was agreed to deduct the common excavation price of $.27½ per cubic yard from the $1.50 and put 4076 on that basis which was an additional $6114.00.

"Q. While on that, as I understand the examiner of accounts made no objection? A. My recollection of it was that it was only three thousand and something; that was later changed.

"Q. He permitted that to go through? A. Yes. That additional claim was for 24,287 yards of solid rock. Mr. Villadsen in his arguments argued that it was not solid rock, admitted it was more than common excavation. When McKee came in to settle the claim I appointed Mr. Villadsen to settle it with him. I remember, it was in the middle of the morning, Mr. Villadsen came in, McKee was there and I told him to go to Mr. Villadsen's office and try to settle the claim, and that was all that was said at that time. I went to lunch an hour or two later and Mr. Villadsen's door was open and I said 'have you reached an agreement yet.' Mr. Villadsen said no, we are a dime apart. I said 'in a situation like that lawyers split the difference.' I don't know if he said $1.40 or $1.50, just remember he said we are a dime apart; and that is as much as I personally had to do with the figure.

"Q. You did approve of what was done. A. Finally agreed on 24287 cubic yards of hard material on a basis of seventy cents, not common excavation; that ran to $17000.00. The other was $6114.00, a total of $23000.00, and of course then deducted $0.27½.

"Q. That in your judgment is what should be done in that situation? A. Yes."

So that the questions are whether (1) there was any reasonable foundation for a contention by the contractor that the so-called "hard material" was not common excavation, because although it was lime rock, shell rock or Selma chalk, it was so embodied and conditioned as not to be common in that vicinity; and (2) whether the State construction engineer was the only person representing the Highway Department who under the law by reason of the contract and specifications could agree with the contractor in respect to such contention.

█ (1) We think there is substantial evidence that the lime rock, shell rock

and Selma chalk encountered by the contractor was not so circumstanced as was common in that vicinity within the meaning of that contract and, therefore, that there was occasion for a claim for extra work. If there was such a substantial claim its allowance was not prohibited by section 68 of the Constitution.

 (2) Was the highway director so circumscribed by his own specifications and contractual terms as to relieve him of all power delegated to him by law to represent the Highway Department of the State to stipulate with the contractor in respect to a claim arising out of the contract as to whether certain features of the work should be classified as extra work or as common excavations. It may be true that the specifications and terms of the contract authorized the construction engineer to act in that regard for the highway director, and his action in that respect might have been sufficient to bind the contractor if that stood alone. But instead of the construction engineer being called on by the director to act in that matter, he pursued a different course for his own satisfaction and made the determination himself on the advice of other engineers and assistants.

We are not here dealing with the question of the effect that procedure and determination would have had if it had been unsatisfactory to the contractor nor of whether the contractor could have insisted that the construction engineer was the only person authorized to make such determination. He made no such insistence. If the highway director himself had been the other party to the contract he could agree to a change in it so as to assume the burden himself with the consent of the contractor. But the original contract was made in the name of the State by the highway director and approved by the governor. The supplemental agreement was made in the name of the State by the highway director and approved by the governor. By section 2, Title 23, Code, the highway director is vested with all the powers, authority and duties of the Highway Department. By section 3, Title 23, the Highway Department is given authority to make contracts and agreements to construct highways as there described. By section 24, Title 23, every such contract shall be in the name of the State and approved by the Highway Department and the governor. By section 16, Title 23, the Highway Department may adopt all reasonable and necessary rules and regulations for the construction of roads and bridges which it shall deem proper.

We do not think it was the purpose of the statutes to provide that by making a contract or setting up stipulations delegating to another the power and duty to represent the director in the discharge of his duties under the law in respect to such contract, the director thereby deprived himself of that power when exercised with the consent of the other party to the contract, and with the approval of the governor. The law does not impose on the construction engineer any duty or authority in that connection, and this case thus differs from that of Alabama Electric Co-op. v. Alabama Power Co., 251 Ala. 190, 36 So.2d 523.

It is our view that the question is reduced to that simple analysis of the legal status. The rulings of the trial court are in accord with our opinion.

Affirmed.

BROWN, LAWSON, and STAKELY, JJ., concur.