BEATTY, Justice.
The defendant, Rex Rainer, as Highway Director of the State of Alabama, appeals from the grant of a writ of mandamus directing him to pay Six Hundred Thirty-Five Thousand Dollars ($635,000.00) to the plaintiff. We reverse and remand.
Tillett Brothers Construction Company, Inc., plaintiff, entered into a contract with the State of Alabama on May 1, 1972 to *37 construct a segment of public highway near Sylacauga. During the course of the work the plaintiff encountered more rock than was originally anticipated and requested an extension of one hundred days for performance. At that time no claim for any additional compensation was made. Although the then highway director, Ray Bass, held the opinion that the project could have been completed in the allotted time, nevertheless an extension of seventy days was granted. Later, another extension of seventy-five days was requested and at that time the plaintiff expressed an intention to make a claim for extra compensation. Bass responded to the request by denying the extension and urging completion of the job. The project engineer recommended to Bass that the claim for extra compensation be denied. The job was completed and accepted by the highway department, and the plaintiff filed a claim with the department for additional compensation. This claim was denied on June 17, 1977. The plaintiff then requested that a claims committee be convened to consider its claim. This committee also denied the claim, reporting:
It is the feeling of the Committee that any loss encountered by the contractor was a combination of his error in hot investigating the job prior to bidding and a lack of prosecuting of the work.
Being dissatisfied with this decision the plaintiff requested that the matter be referred to an advisory board, the provision for which was included in the specifications which were a part of the original contract. That committee was appointed on October 7, 1977 and on January 24, 1978 it recommended paying the plaintiff the sum of $585,235.58. Although under the contract specifications this report was not binding on the highway director, nevertheless in a March 3, 1978 letter to the department’s construction engineer, Page Bass directed:
Please take the necessary steps to have the final estimate prepared to reflect the monetary award in the Advisory Board’s review as final settlement for this claim. This amount is not to include any interest. This final should be forwarded to the contractor as soon as possible in order to expedite the final settlement of this matter. [Emphasis added.]
A supplemental contract was prepared in order to effectuate this decision but a dispute arose concerning its execution. Bass left the office of highway director and was replaced by Dan Turner who in turn was succeeded by the present defendant, Rex Rainer. Turner refused to allow the claim. The plaintiff filed this action against the former and incumbent highway directors to recover damages based upon alleged fraudulent misrepresentations made in connection with the invitation to bid on the job. Later the complaint was amended to include a prayer for a writ of mandamus for the amount awarded by the advisory board. The Fifty Thousand Dollars retainage was claimed in a later amendment. Turner was removed as a party by the grant of his motion to dismiss. Following a hearing, the trial court found that:
Although the evidence is in dispute, the Court finds that Bass, who resigned as Highway Director on March 31,1978, executed the Supplemental Agreement while he was still in office and did so in his capacity as Highway Director.
In this connection the Court finds that Bass approved the claim in early March when he instructed the Highway Department personnel to proceed with the mechanics for the payment of the claim or, alternatively, he approved the claim when he signed the Supplemental Agreement in his capacity as Highway Director.
In the view of the trial court, this action on the part of Bass obligated the present highway director to pay the amount of the advisory board’s award. In issuing the writ of mandamus to the present highway director, Rainer, ordering him to take action to have plaintiff paid, the trial court also included the amount of the retainage. An appropriate Rule 54(b) order was entered allowing this appeal from the grant of the writ.
The testimony upon which the alternative finding of the trial court was based dealt *38 primarily with two factual questions: (1) whether on March 3, 1978, before his departure as highway director, Bass had made a final approval of the claim of the plaintiff for additional compensation, and (2) whether, if he had not done so, Bass nevertheless had executed the supplemental contract pertaining to that additional compensation while still holding the position of highway director. It is unnecessary for us to comment upon the trial court’s assessment of .that evidence because we are convinced that the requirements of law to have made that compensation a binding obligation of the State were not met. In coming to that conclusion we refer to the defendant’s contention that, in any event, the decision to pay the additional compensation to Tillett Brothers required the approval of the governor (which was never given) in order to make it a binding obligation. We agree, with that position.
At least since the Code of 1923 the Alabama' Legislature has enacted statutes denominating the authority and management of the State Highway Department. See generally Code of 1975, Title 23, Chap. 1-5. That title extensively governs all phases of management, expressly creating the position of director and setting forth his duties and the sphere of his authority (“All the powers, authority and duties vested in the highway department shall be exercised by the highway director.” — § 23-1-21). The authority of the department, through its director, to enter into contracts for the procurement of equipment is specifically provided (§ 23-1 — 50), as is the purchase by the department of motor fuels and lubricants (§ 23-1-51). It is statutorily allowed to contract with the cities and counties to perform work on the roads, bridges and highways within the state (§ 23-1-47, 23-1-48, 23-1-53). And without exhaustively surveying the many other statutory authorizations (and controls) with which the department and its director are vested, it must be pointed out that the legislature has given the department the authority to construct roads (§ 23-1-40), to determine the qualifications of bidders (§ 23-1-56), and to adopt rules and regulations in connection with road construction (§ 23-1-59).
In the matter of contracts entered into by the department for road construction, the legislature has been explicit, for it has mandated that:
Every contract for road . . . construction . . . shall be made in the name of the state of Alabama, approved by the highway department and the governor. [Emphasis added.] [§ 23-1-54.]
The legislature has declared, in fact that:
No contracts for construction . of highways . . . shall be let without the approval of the governor . . . [Emphasis added.] [§ 23-1-55.]
Even when a road is to be constructed under the authority of the Alabama Highway Authority (§ 23-1-150 through 23-1-155), its contracts for road construction are to be approved by the governor (§ 23-1-156). See also § 23-1 — 157 requiring the governor’s approval of the Authority’s bonds. Likewise, the approval of the governor is required for road construction contracts entered into by the Alabama Highway Finance Corporation (§ 23-1-170) and of its bonds (§ 23-1-177).
It is clear that the legislature has fixed as a condition precedent to their validity the approval by the governor of monetary payments arising out of contracts for road construction entered into by the highway department through its director. In other words, the legislature has recognized that the governor, as chief executive officer of the state, has a direct fiscal responsibility over the payment of state funds under road contracts made by his appointed subordinates.
The plaintiff does not dispute the requirements of § 23-1-54 but argues that it has no applicability because the State’s obligation here arose out of a “claim.” We are not cited to and have not found any statute in the Highway Code pertaining to “claims” per se. The provisions in that Code deal with payments under the various types of road construction and the like, and as we have shown, these are valid obligations only if approved by the governor. *39 The only “claims” of the nature suggested by the plaintiff falling outside the Highway Code are those referred to in Code of 1975, § 41-9-62, giving the board of adjustment jurisdiction to consider:
(8) All claims for underpayment by the state of Alabama or any of its . departments to parties having dealings with the state ... or any of its . departments;
But if this were a claim cognizable under that statute, it would fall within the purview of that board, not the highway director, to grant relief, when no court has jurisdiction. Hawkins v. State Board of Adjustment, 242 Ala. 547, 7 So.2d 775 (1942).
The plaintiff also maintains that the “Supplemental Agreement” utilized by Bass was merely an internal method which Bass selected to implement his decision to pay the plaintiff. That reasoning falls for two reasons. One pertains to what we have discussed, that is, such a conclusion reduces the obligation to a mere claim, unrelated to a contract dispute and therefore properly a matter for the board of adjustment. Another pertains to the nature of the “Supplemental Agreement” itself.
The authority of the highway director to make a supplemental contract is statutory. Code of 1975, § 23-1-60(3). That entire Code section is adopted from the highway department’s standard specifications for highways and bridges, and allows the director to make changes in construction as may be necessary, to determine the need for new or additional work not contemplated in the original contract, and to enter into a supplemental contract with the prime contractor reflecting those changes. In other words, the legislature has stated that after the original highway contract has been executed, the director may determine that previously uncontemplated work must be done to complete a project, he may amend the “construction details,” and he may make the changes binding on the State by entering into a supplemental contract. That is precisely what Bass did in this case. Even though the extra work claimed by Tillett had already been done when Tillett Brothers made its “claim,” Bass was obliged by law to find that at the time it was done it was necessary for the completion of the project. The only statutory method available for authorizing payment was § 23-1-60, and Bass complied with those provisions by using the supplemental contract to reflect the work done under the “claim.” Indeed, the supplemental agreement prepared at his direction and later signed by him proceeds on the basis of work to be performed to complete the project. That agreement recites that:
WHEREAS, certain items of construction encountered necessary to the project are not covered by the original contract on the above project, and
WHEREAS, in compliance with Act No. 228, 1969 Regular Session, Alabama Legislature, approved by the Governor July 29, 1969 (now § 23-1-60), the following items of work constitute that which is to be performed by the contractor under this supplemental agreement, to-wit: Payment of claim approved by the Advisory Board. Lump Sum $585,235.58.
The supplemental contract continues:
NOW THEREFORE, the parties above mentioned do hereby agree to this supplemental agreement consisting of the above mentioned items of work and prices, and agree that this supplemental agreement is hereby made a part of the original contract on the above project to be performed under the Specifications hereof, and that the original contract is in full force and effect except so far as it might be modified by this supplemental agreement. [Emphasis added.]
Following this clause were express provisions made for the signatures of the highway director, the contractor, its surety, and the governor, and approvals by the division engineer and the department’s construction, engineer.
These facts belie any suggestion that this procedure was only a ministerial method for *40 processing the payment of the sum claimed. Nor was it considered such by Bass’s own construction engineer who advised plaintiff’s certified public accountants by letter:
This is to advise that the Highway Department is in the process of preparing a supplemental agreement to pay Tillett Brothers Construction Company, Inc. the lump sum amount of $585,235.58 as final settlement of his claim on the above referenced project. This is the amount recommended by the Advisory Board and approved by Mr. Ray D. Bass, Highway Director.
This amount will be paid on the final estimate after the supplemental agreement has been approved. The retainage being withheld in the amount of $50,-000.00 will also be released on the final estimate. [Emphasis added.]
The record shows that Bass was sent a copy of this letter which viewed the supplemental agreement as one of the final steps necessary to payment. Bass’s own memorandum of March 3, 1978 recognized that “final steps” and “final settlement” would be necessary, and his own approval of the supplemental agreement also recognized as much.
The plaintiff’s suggestion that the standard specifications, which provided for the resolution of disputed claims for extra compensation, somehow allowed the creation of a “claim” unrelated to the highway contract or to other statutorily authorized methods of payment likewise is untenable. The standard specifications themselves were incorporated into the original contract by reference. Thus they became a part of the original contract, one subject to the governor’s approval. § 23-1-54. Under the plain terms of the supplemental contract, that supplemental contract was made a part of the original contract. Because the supplemental agreement dealt with highway construction, and in words and in effect supplemented the original contract, it was one which required approval by the governor. §§ 23-1-54, 23-1-55. To construe the requirements of the statutes otherwise would not only offend the statutory mandate described but would allow an incongruous result, viz. the governor’s approval would be required for highway construction contracts but for “claims” for money arising out of those contracts, which might even exceed the sum of money originally agreed upon, only the signature of his subordinate would be necessary. We cannot believe that the legislature intended such a result when it adopted the statutory scheme manifested by the Highway Code.
The cases cited to us by the plaintiff in support of a contrary view are inapposite. Hardin v. Fullilove Excavating Co., Inc., Ala., 353 So.2d 779 (1978) did not involve a payment arising out of a road construction contract. State Board of Administration v. Rocquemore, 218 Ala. 120, 117 So. 757 (1928) was decided under a provision of the Highway Code which presently is § 23-1— 50, and which authorizes payments out of the highway fund for purchases of supplies and materials by the department. By statute such purchases need not be approved by the governor. McFarland v. McKee, 252 Ala. 439, 41 So.2d 574 (1949) actually supports the conclusions we have reached. That case held that the highway director could by supplemental agreement modify his previously agreed upon specifications in order to pay a claim which had arisen under the performance of the original highway construction contract. It is important to note that in McKee the director approved a supplemental contract which was approved by the governor and which changed an original contract which had been approved by the governor.
The most recent decision of this Court analogous to the instant case is McDowell-Purcell, Inc. v. Bass, Ala., 370 So.2d 942 (1979). In that case a claim for additional money following performance under a highway contract was denied by the highway director. This Court agreed with the lower court’s decision to deny mandamus because the director, having possessed the discretion to either approve or deny, was shown to' have denied the claim without arbitrariness. It is true that the Court, by dictum, did observe that had the department approved the “payment request” the writ would have *41 issued because nothing more would have remained to be 'done but pay. However, this Court did not purport to discuss what would have constituted final approval. Consequently, it would be wrong to interpret that opinion to have dispensed with the statutory requirement of the governor’s signature in an instance like the present.
Because the defendant presented no issue on appeal on that part of the trial court’s order pertaining to the retainage, we pre-termit discussion on that aspect.
For the reasons we have expressed the judgment must be, and is, reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, FAULKNER, JONES, ALMON and EM-BRY, JJ., concur.
SHORES, J., dissents.